**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**ABDIFATAH ABUKAR HAJI,**

**Plaintiff,**

**v.** **Case No. 25-cv-168**

**AMY VAUGHN, *et al.*,**

**Defendants.**

---

**ORDER**

---

Plaintiff Abdifatah Abukar Haji, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Haji was allowed to proceed on a First Amendment free exercise claim against defendants Amy Vaugh, Tracy Lewandowski, Cpt. Shallow, Chaplain Deacon Dick, and Elizabeth Shallow. He was also allowed to proceed on a Religious Land Use and Institutionalized Persons Act (RLUIPA) claim against defendant Waukesha County Sheriff, Eric J. Severson. The defendants filed a motion for summary judgment on the ground that Haji failed to exhaust his administrative remedies. (ECF No. 28.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 5, 23.) The motion is ready for a decision. For the reasons stated below, the court denies the defendants' motion for summary judgment on exhaustion grounds.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

*Standard*

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court and produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

*Relevant Procedure for Exhausting Administrative Remedies*

The process in place during the relevant time period is found in the Waukesha County Sheriff's Department County Jail Facility Inmate Rules, Regulation, and Information Packet. (ECF No. 32.) The handbook states that if a prisoner has a basis for a complaint concerning a jail policy, a condition within the jail, an action involving another prisoner or staff member, or an incident that occurred within the jail, he may use the grievance system. (*Id.* at 5-6.) According to the handbook, there is a two-step

process to grieve an issue. (*Id.* at 5.) First, the prisoner must "attempt to resolve the complaint informally with a correctional officer or support staff member. This is to be done verbally or utilizing the Inmate Communication Form." (*Id.*) An Inmate Communication Form is a "general purpose document used to request a variety of services and programs." (*Id.*) If informal resolution is not successful, "written complaints/grievances and grievance appeals are to be submitted in writing on the form provided for that purpose." (*Id.*) Grievances are then reviewed by staff. (*Id.*) The procedure states, "The Waukesha County Jail Inmate Grievance/Grievance Appeal Form will be utilized for the submission of inmate grievances and grievance appeals." (*Id.* at 6.) Also, prisoners may only file one grievance every 15 calendar days. (*Id.*) Grievances must be submitted five calendar days after the incident, though the jail administrator may accept a late grievance for good cause. (*Id.*)

The court notes that the procedure itself does not provide details on how to appeal, the levels of appeals or the time frame to appeal an issue. The defendants state that prisoners can escalate their grievance to "Level 2" after they receive a response to the "Level 1", or first formal written, grievance. (ECF No. 30, ¶¶ 4-5.) A prisoner can then escalate a grievance to "Level 3" after receiving a response to their "Level 2" grievance. (*Id.*, ¶ 6.) The defendants state that the "Level 3" grievance is the "final step of the inmate grievance process." (*Id.*, ¶ 7.) The defendants also state that, "All inmate requests and grievances are required to be made electronically using tablets that are available to the inmates." (*Id.*, ¶ 8.)

*Haji's Claims and Attempts to Exhaust his Administrative Remedies*

Haji asserts that since November 12, 2024, he has been denied the right to have religious services and religious materials. (ECF No. 1 at 2-4.) The parties do not dispute that Haji submitted several requests for a Qur'an using the electronic version of the Inmate Communication Form. (ECF Nos. 33-34, 36-38.) They also do not dispute that Haji submitted a "Level 1" grievance regarding not receiving the Qur'an on September 21, 2024. (ECF No. 35.) In that grievance, Haji states, "I request last week to receive the Quran for free to the religious. They haven't responded to me. I believe they interested [*sic*] for me to purchase the Quran. Which is wrong. Is against my constitution rights. I believe I don't need to purchase the Quran when I can received [*sic*] for free. And if this issue is not solve my family is going to put a complaint." (*Id.* at 1.) Staff responded the same day and indicated that a Qur'an would be brought to Haji later that night. (*Id.*) The grievance was then closed. (*Id.*)

The defendants state that on November 12, 2024, Haji submitted a "Level 1" grievance, stating "I want to know if we don't have a Imam for Friday prayer can we still pursue the Friday prater [*sic*]" I don't believe we need any iman we as inmates can lead the Friday prayer. Who ever is familiar with the Quran can lead the Friday prayer, So if we can't get a iman we can still pursue the Friday prayer. I believe we have the right to practice our faith." (ECF No. 39 at 1.). That same day, jail staff recategorized the grievance to an Inmate Communication Form. (*Id.*) Jail staff then responded, "Yes, you may gather with any other inmates in your assigned housing pod." (*Id.*) The request was then closed. (*Id.*) On November 13, 2024, Haji filed an

Inmate Request Form stating, "Is so funny for your responds [*sic*] right? Gather everybody in your pod so ya'll [*sic*] can pray together really? You know I'm the only Muslim in my pod. Is find [*sic*] cause we already know this jail never had a Friday pray for all the Muslim people. But y'all will figure it out when we filled [*sic*] a law sue [*sic*] in this jail for refusing to practice our Friday prayer." (ECF No. 40 at 1.) Staff responded, "I do not know who is what religion in your pod. It is not something I need to know other than to determine a religious request. We do not house inmates based on religion. You may pray on Friday, no one is denying that", and then closed the matter. (*Id.*) It is undisputed that Haji wrote one more Inmate Request Form regarding services on January 15, 2025. (ECF No. 41.)

*Analysis*

The defendants argue that Haji failed to exhaust his administrative remedies because he did not appeal the "Level 1" grievances or escalate any of the Inmate Complaint Form requests to Level 1 grievances. Haji argues that he was confused by the grievance process and he could not get proper forms.

The Seventh Circuit Court of Appeals "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Id.* "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). An inmate can overcome his failure to exhaust his administrative remedies only where he can demonstrate that the

grievance process was unavailable to him. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018).). An inmate can show that a grievance process was unavailable when "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved inmates'; (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process," but these are "only examples, not a closed list." *Id.* (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016)).

Unavailability can also occur where there are "omissions by prison personnel, particularly failing to inform the prisoner of the grievance process." *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). "It is not incumbent on the prisoner 'to divine the availability' of grievance procedures. Rather, prison officials must inform the prisoner about the grievance process." *Id.* (citations omitted). "The prison cannot shroud the prisoner in a veil of ignorance and then hide behind a failure to exhaust defense to avoid liability." *Id.* In short, "Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about." *Hill v. Snyder*, 817 F.3d 1037, 1040 (7th Cir. 2016).

Haji argues that the inmate handbook was outdated and the written procedures did not describe the actual practice of handling grievances. (ECF No. 51, ¶ 5.) Specifically, he notes that the procedure in the handbook discusses the practice of submitting grievances using a specific form, which is a paper form, whereas in practice, prisoners need to use the electronic system to submit the form. Haji also argues that "there is no mention of a Level 1, 2, or 3 grievance in the handbook." (ECF

No. 51 at 9.) Haji further points out that staff would close the grievances/requests before the stated timeframe, which prevented him from escalating them because he did not know how to "reopen" or appeal a closed request/grievance. Additionally, Haji notes that he had no control over whether a grievance was reclassified as a request and did not know how to contest or escalate the issue when that happened. (ECF No. 60, ¶ 2.)

The Jail appears to have two separate grievance processes—one that is outlined in the handbook and another, which involves submitting grievances electronically. The defendants have not explained how prisoners learn about the actual practice generally. They argue that jail staff had instructed Haji to use the electronic system but they offer no details as to when this occurred. (ECF No. 58 at 3.) Even if Jail staff had instructed Haji on how to file an electronic grievance (which is totally different than what is required in the handbook), it is still unclear how Haji (or any other prisoner at the Jail) learns how they can escalate grievances. The handbook is silent on this process. As far as the court can tell, the grievances themselves do not contain any information on how to escalate Inmate Communication Requests to a Level 1 grievance or how to escalate a closed Level 1 grievance to a Level 2 and so forth. The handbook and the forms are also silent on what a prisoner must do to appeal a grievance that has been closed out. The defendants argue that Haji was aware of how to escalate grievances because there are examples (unrelated to the issues at hand) of him escalating grievances. However, the one grievance that Haji submitted during the relevant time frame that was escalated was not closed

prior to Haji receiving a response to his "Level 1" grievance. (ECF No. 61-1). All other grievances occurred in Late Spring/Early Summer 2025. (ECF No. 61, ¶¶ 5-7.) This is not evidence, then, that Haji knew *during the relevant time period* how to escalate requests or grievances that had been closed out. To the extent that the defendants are arguing that he never exhausted the religious services piece of his claims, the court notes that he attempted to file a grievance, which was then converted to a request. Haji then attempted to appeal when he responded to that request. (*See* ECF No. 40).

In short, the grievance procedure listed in the Jail's handbook is completely different than the actual grievance procedure being used at the Jail. The defendants have not demonstrated that Haji was aware or should have been aware of the "proper" or "actual" procedure. As such, it appears the exhaustion process was unavailable to him. The defendants' motion for summary judgment on exhaustion grounds is denied.

**CONCLUSION**

For the reasons stated above, the defendants failed to meet their burden of showing that Haji did not exhaust his administrative remedies. Their motion is denied. The court will issue an amended scheduling order at a later date.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment on exhaustion grounds (ECF No. 28) is **DENIED**.

Dated in Milwaukee, Wisconsin this 26th day of August, 2026.

Stephen C. Dries
STEPHEN DRIES
United States Magistrate Judge